Earl HOLLEY, Appellee,

v.

**SANYO MANUFACTURING, INC., Appellant.**

No. 84–2303.

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1985.

Decided Aug. 30, 1985.

Rehearing and Rehearing En Banc Denied Oct. 24, 1985.

---

Thomas C. Walsh, St. Louis, Mo., for appellant.

Keith Blackman, Jonesboro, Ark., for appellee.

Before ROSS and JOHN R. GIBSON, Circuit Judges, and MEREDITH,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Sanyo Manufacturing, Inc. appeals a judgment entered for Earl Holley on a jury verdict of willful discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1982). Holley was discharged in 1982 when Sanyo instituted a plant-wide reduction-in-force at its Forrest City, Arkansas location and combined Holley's position with that of a younger man. We hold that since Holley offered no evidence of age discrimination beyond these facts, he did not make his case under the statute. Therefore, we reverse.

In 1979, Earl Holley went to work for Sanyo Manufacturing, Inc. at its Forrest City, Arkansas plant as a cabinet finishing foreman in the wood products division. In February 1980, he was promoted to general foreman but later that year was downgraded and shifted to the position of finishing coordinator, after the company determined he could not handle the pressures of being a general foreman. In the spring of 1981, Holley took a two-month leave of absence to undergo heart bypass surgery and afterward returned to the same job. In January 1982, Holley was terminated by Sanyo. His supervisor at that time was Wally Ball, who was involved in deciding who should be fired under the reduction-in-force. Wally Ball's brother, Stanley Ball, had been hired and trained by Holley. When Holley was discharged, Holley's position of finishing coordinator was combined with Stanley Ball's position, and Stanley Ball was given the new job.

After his discharge, Holley brought this action against Sanyo, alleging age discrimination. At trial, he testified to his experience in the wood finishing field, his training of Stanley Ball, his conflicts with Wally Ball, and the circumstances surrounding his discharge. Other witnesses for Holley testified to his abilities and experience. There was also testimony that the quality of work on the line Holley was responsible for declined after Stanley Ball took over.

Sanyo presented evidence that Holley's discharge was part of a general reduction-in-force and consequent reorganization of positions. There was testimony that by the end of 1981 the plant was operating at about 20% of capacity. The hourly work force was reduced from 228 in July 1981 to 110 in March 1982. The salaried work force during the same period decreased from 49 to 37. Approximately one-fourth of the salaried work force was laid off in the department in which Holley was employed.

There was testimony that Sanyo selected those to be laid off by considering their work records, seniority, and the need for the work that was performed. There was also testimony that before the termination Sanyo made an analysis of the effects of the layoff on race, sex, and age groups. In Holley's department eight of 31 salaried employees were discharged. Two of these eight were over 40 years old. The discharges caused both the average age of the employees and the percentage of employees within the statutory age-protected class to slightly increase.

After Sanyo's motion for a directed verdict was denied, the jury returned its verdict for Holley, found compensatory damages in the amount of $41,568.23, and found by a preponderance of the evidence that the age discrimination was willful. Based upon this verdict, the district court awarded a like amount for liquidated damages, awarded attorneys' fees in the amount of $7,830.40, and entered judgment

* The HONORABLE JAMES H. MEREDITH, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

for Holley. Sanyo's motion for judgment n.o.v. was also denied.

The Age Discrimination in Employment Act (ADEA) makes unlawful the discharge of an employee because of his age[1] but specifically excepts discharge for "good cause."[2] Sanyo argues that Holley was discharged because of a general reduction-in-force dictated by business necessities (which is "good cause") and that he has shown no other reason for his discharge. Thus, Sanyo argues that Holley did not make a submissible case for the jury, and, consequently, that the district court erred in not granting Sanyo's motions for a directed verdict and for judgment n.o.v.

We may find for Sanyo only if "all the evidence points one way and is susceptible of no reasonable inferences sustaining the position" of Holley. *Crues v. KFC Corp.*, 729 F.2d 1145, 1148 (8th Cir.1984) (quoting *Dace v. ACF Industries*, 722 F.2d 374, 375 (8th Cir.1983) (quoting *Decker-Ruhl Ford Sales v. Ford Motor Credit Co.*, 523 F.2d 833, 836 (8th Cir.1975))). Further, we must assume as true all facts in Holley's favor which the evidence tends to prove and give him the benefit of all reasonable inferences. *See Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1218 (8th Cir.1985). The task before us is, bearing in mind this standard, to adduce the nature of proof required under the ADEA and to evaluate the evidence Holley presented at trial against such requirements.

Because the ADEA grew out of Title VII of the Civil Rights Act of 1964,[3] and because much of the language of the ADEA parallels that of Title VII,[4] we have held that the guidelines of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case, may be applied to ADEA cases. *See Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 289 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983); *Cova v. Coca-Cola Bottling Co.*, 574 F.2d 958, 959 (8th Cir.1978). *McDonnell Douglas* lays out a three-step "judicial minuet" in which the burden of production rests first on the plaintiff to establish his prima facie case, then on the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection," 411 U.S. at 802, 93 S.Ct. at 1824, and finally again on the plaintiff to show that the defendant's reasons were pretextual. *Id.* at 804, 93 S.Ct. at 1825; *see Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Thus, "[t]he ultimate burden that plaintiff must meet is to show that age was a determining factor in the discharge." *Cova*, 574 F.2d at 960 (citing *Laugesen v. Anaconda Co.*, 510 F.2d 307, 315–17 (6th Cir.1975)). Of course, if a plaintiff cannot make his prima facie case, this ultimate burden of persuasion will not be met.

The first issue, then, is the nature of an ADEA prima facie case. In *Cova*, again following *McDonnell Douglas*, we

---

**1.** 29 U.S.C. § 623(a)(1) (1982) provides:
It shall be unlawful for an employer * * * to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]

**2.** *Id.* § 623(f)(1) and (3) provides:
It shall not be unlawful for an employer, employment agency, or labor organization—
(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age; * * * [or]

(3) to discharge or otherwise discipline an individual for good cause.

**3.** 42 U.S.C. § 2000e to 2000e-17 (1982). In Title VII, Congress directed the Secretary of Labor to recommend legislative action regarding the problem of age discrimination in employment. The report, U.S. Dep't of Labor, *The Older American Worker: Age Discrimination in Employment* (1965), led to passage of the ADEA. *See generally EEOC v. Wyoming*, 460 U.S. 226, 229–31, 103 S.Ct. 1054, 1057–58, 75 L.Ed.2d 18 (1983) (legislative history of ADEA).

**4.** *Compare* 29 U.S.C. § 623(a) *with* 42 U.S.C. § 2000e-2(a).

held one way to make a prima facie case is for the plaintiff to show:

> (1) that he or she is within a protected age group, (2) that he or she met applicable job qualifications, (3) that despite these qualifications, he or she was discharged, and (4) that, after the discharge the position remained open and the employer continued to seek applications from persons with similar qualifications.

574 F.2d at 959; *see Halsell,* 683 F.2d at 290.

In the present case, Holley was within the protected age group,[5] was discharged, and, despite some argument from Sanyo, appears to have been qualified for the job. Difficulties arise, however, with the fourth requirement. As we have noted, Holley's discharge took place within the context of a general reduction-in-force at Sanyo's Forrest City plant. His position did not remain open and, instead, was combined with the duties of another position. At this point, we could simply hold the *McDonnell Douglas* standard was not met and end our inquiry. *See Ray v. MacMillan Bloedel Containers, Inc.,* 738 F.2d 965, 966 (8th Cir.1984) (per curiam) (in reduction-in-force situation, plaintiff did not prove prima facie case where "[h]e failed to prove that the job was held open until it was filled by a younger person."). We believe, however, since *McDonnell Douglas* made clear that its requirements were not exclusive, and since earlier decisions of this circuit have not squarely dealt with the particular problems presented when there is a reduction of forces in an economic downturn with a resulting combination of job duties,[6] that further consideration of the issue is appropriate.

In a similar situation, the District of Columbia Circuit found that the plaintiff made his prima facie case simply by showing, in addition to the first three requirements, that "younger persons were retained and others later promoted." *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 343 (D.C.Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). Thus, following *Cuddy v. Carmen,* 694 F.2d 853, 857 (D.C.Cir. 1982) (plaintiff must show he "was disadvantaged in favor of a younger person"), the *Coburn* court did not require that age discrimination on the job be limited to a particular position. Acknowledging that in a reduction-in-force situation the discharged employee will nearly always be qualified for his position, and acknowledging what follows from its standard— that "anyone in the protected age group will presumptively have a cause of action under the ADEA," the *Coburn* court nonetheless rejected the suggestion that "direct evidence of discrimination" be required for a prima facie case since "the exigencies of a reduction-in-force can best be analyzed at the stage where the employer puts on evidence of a nondiscriminatory reason for the firing." 711 F.2d at 343.

We believe, however, that some additional showing[7] should be necessary to make a prima facie case in a reduction-in-force situation. The ADEA does not re-

---

**5.** 29 U.S.C. § 631(a) limits the protection of the ADEA "to individuals who are at least 40 years of age but less than 70." Holley was 52 at the time he was terminated.

**6.** For example, while *Tribble v. Westinghouse Elec. Corp.,* 669 F.2d 1193 (8th Cir.1982), *cert. denied,* 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983), did involve the termination of a position at a time the particular industry involved was generally facing financial difficulties, we specifically concluded there that since "[a]t the same time, other younger persons were hired by Westinghouse to fill positions substantially similar to that held by Tribble within the corporation" the fourth element of the *McDon-*

*nell Douglas* prima facie test had been met. 669 F.2d at 1196. *Cova v. Coca-Cola Bottling Co.,* 574 F.2d 958 (8th Cir.1978), also involved an economic downturn but simply applied the *McDonnell Douglas* standard without questioning its applicability.

**7.** We agree with the *Coburn* court that direct evidence is inappropriate for a prima facie case—but for the reason that it would render unnecessary the analysis of *McDonnell Douglas,* which essentially involves a shifting of inferences. Where there is direct evidence, consideration of inferences is unnecessary. *Trans World Airlines, Inc. v. Thurston,* —— U.S. ——, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985).

quire that every plaintiff in a protected age group be allowed a trial simply because he was discharged during a reduction-in-force. We agree with the Sixth Circuit that "[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination" and that the "plaintiff in such reorganization cases must come forward with additional * * * evidence that age was a factor in his termination in order to establish a prima facie case."[8] *LaGrant v. Gulf & Western Manufacturing Co., Inc.,* 748 F.2d 1087, 1090–91 (6th Cir.1984); *see also Hedrick v. Hercules, Inc.,* 658 F.2d 1088, 1094 (5th Cir.1981) (prima facie ADEA reduction-in-force case requires production of "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate") (quoting *Williams v. General Motors Corp.,* 656 F.2d 120 (5th Cir. 1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982)); *Sahadi v. Reynolds Chemical,* 636 F.2d 1116, 1117 (6th Cir.1980) (employee who showed only that he was "victim of a company cutback in its labor force necessitated by depressed economic conditions" and that his job "was combined into the duties of a younger employee" did not establish prima facie case). As the Sixth Circuit has earlier reasoned:

> The progression of age is a universal human process. In the very nature of the problem, it is apparent that in the usual case, absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in. This factor of progression and replacement is not necessarily involved in cases involving the immutable characteristics of race, sex and national origin. Thus, while the principal thrust of the Age Act is to protect the older worker from victimization by arbitrary classification on account of age, we do not believe that Congress intended automatic presumptions to apply whenever a worker is replaced by another of a different age.

*Laugesen v. Anaconda Co.,* 510 F.2d 307, 313 n. 4 (6th Cir.1975).

This further showing could take many forms. Direct evidence, as we have observed, simply makes unnecessary the burden-shifting analysis. Such showing could be made, however, by statistical evidence (as, for example, where a pattern of forced early retirement or failure to promote older employees can be shown) or circumstantial evidence (such as a demonstration of a preference for younger employees in the business organization). *See Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 921 (2d Cir.1981). Further, the factually-oriented, case-by-case nature of ADEA claims requires that we not be overly rigid in our consideration of the evidence of discrimination a plaintiff may offer.

■■ In the present case, Holley tried to prove age discrimination three ways. First, he offered evidence that in his personnel file comments were made regarding his health problems, for which heart bypass surgery was eventually required. Holley's supervisor had noted on a performance summary that "Bud [Holley] tended to be forgetful, but was due to heart condition" and that Holley's "performance will continue to improve with improved health." Holley now argues that these "derrogatory [sic] comments" were proof of age discrimination, since his health "was a direct connection to his age" [sic]. Heart problems,

---

8. As we stated in *Jorgensen v. Modern Woodmen of America,* 761 F.2d 502, 505 (8th Cir.1985), "[t]he ADEA is not intended to be used as a means of reviewing the propriety of a business decision on the part of" the employer. In *Parcinski v. Outlet Co.,* 673 F.2d 34 (2d Cir.1982), *cert. denied* 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983), the court found that the "essential corporate belt-tightening" there was properly viewed as a "business decision made on a rational basis" and then stated that the ADEA "does not authorize the courts to judge the wisdom of a corporation's business decisions." *Id.* at 36–37 (citing *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)).

however, may arise at any age. Holley essentially argues the proposition that any time an employer comments on the health of an older employee, proof of discrimination exists. The causal link, however, must be considerably stronger. Further, even if Holley's health problems were related to his age, the ADEA does not require Sanyo to ignore them for that reason alone. As the First Circuit noted in *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1016 (1st Cir.1979), "Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence." Thus, even if Holley had been discharged because of his heart condition, that alone would not have afforded him an ADEA claim.

Second, Holley argues that statistical evidence supports his claim. He argues that since 40.7% of the *total* work force at the Forrest City plant was within ADEA age protections, but only 25.8% in the wood products division, it follows that there "is a definite unexplained and substantial deviation with regard to ADEA protected personnel in the wood products areas of the plant versus other areas of the total Sanyo plant at Forrest City." The crucial statistical questions, however, must focus on the effect of the reduction-in-force: do the statistics show that the layoffs and firings discriminated against older employees? In the wood products division, eight of 31 employees lost their jobs in January 1982. Of those eight, two were in the protected class. The percentage of such employees in the protected class before the layoff was 25.8%; after the layoff it was 26.0%. The average age of the work force before the layoff was 34.8 years; after the reduction it was 35.0 years. Thus, there is no statistical evidence that protected employees in the wood products division were discriminated against during the reduction-in-force. The statistic Holley offers might be relevant were he claiming, for instance, that the wood products division had refused to hire him because of his age. But here Holley *had* been hired by the division. We

do not see how Holley can claim that a reduction-in-force that increased the percentage of protected employees and increased the average age of employees can be viewed as evidence of age discrimination.

Third, and most centrally, Holley claims that the fact he was replaced by a younger man, in a situation where he had greater experience and expertise than his replacement (and was also making more money than his replacement), was evidence of discrimination. The fact alone that Holley's duties were assumed by a younger person—the fact of an age differential—itself is insufficient additional evidence to establish a prima facie case. *Sahadi*, 636 F.2d 1118. In addition, it is clear from the record before us that the younger person did not simply take Holley's place but, rather, that the duties of Holley's position and that of the younger person's position were consolidated pursuant to the plan necessitated by the reduction-in-force. Thus, to make his case on this point, Holley would have had to show that he was denied the *consolidated* position despite his greater expertise and because he would have made more money. However, at trial, Holley offered no evidence as to what either his or the younger person's salary would have been in the new position. Further, although Holley offered evidence to show that under his replacement there were a greater number of rejected products on the line he previously had been responsible for, he did not offer evidence to show his greater qualifications for the consolidated position—a lacuna particularly significant in light of the fact that Holley previously, when promoted, had been unable to cope with the greater responsibility of being a general foreman.

The essence of Holley's claim is contained in his statement at trial, when asked why he had been fired, that

> Well, I've give it a lot of thought and the person they put in my place was making less money than I was, which was a savings to the company, plus, he was younger, plus, I was quite a bit

older. I thought I knew what I was doing, I think I do. Mr. Ball, he just couldn't push me around. I didn't cater to the way he did people, so that is an indication that I got.

Very nearly the same testimony was offered in *LaGrant, supra,* where the plaintiff "testified that he believed age played a part in his termination because he could think of no other reason for the decision," "suspected that [his replacement's] lower salary was a factor" and "emphasized that he·had more experience than [his replacement]." 748 F.2d at 1090. The court then found that the plaintiff, in so testifying, had "come forward with nothing, other than his subjective determination that he was better qualified than [his replacement] to indicate that age played a role in [the] decision to terminate him." *Id.* Holley, at base, depends on similar subjective reactions, which simply are not sufficient to make his case.

Had this not been a reduction-in-force case involving eliminated positions but, rather, a case involving the replacement of an older person with a younger one where the position remained the same, then Holley's testimony might carry more force. In *Dace v. ACF Industries, Inc.,* 722 F.2d 374, 378 (8th Cir.1983), for example, the plaintiff's evidence that the company saved money by demoting him and *knew* that it would save money, was strong enough to lead us to reverse the district court's directed verdict. Here, however, the record shows that Sanyo's reduction-in-force presented an entirely different situation. Under these circumstances, we believe that Holley's evidence at trial was insufficient to create a prima facie case of discrimination under the ADEA.

■ Further, our holding today does not stem solely from this conclusion, for even ·if we were to assume that Holley's evidence established a prima facie case of discrimination, Sanyo articulated nondiscriminatory reasons for the discharge. The evidence demonstrated a careful plan to spread the impact of the layoffs over all groupings of employees based on race, sex, and age. Holley's discharge, which followed from the consolidation of his position with another pursuant to the carefully planned reduction-in-force, was based on a reasonable factor other than age and was for "good cause." *See* 29 U.S.C. § 623(f)(1), (3). The ultimate question here was whether Sanyo's actions were age-discriminatory. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). Holley's evidence, which we have outlined above and need not repeat, makes no showing that Sanyo's articulated reasons for discharge were pretextual.

We reverse the judgment entered on the verdict for Holley and remand to the district court with instructions that judgment be entered for Sanyo.