Robert E. VICOR, Plaintiff,

v.

Robert A. ROSENBERG, etc., Defendant.

Nos. 85–2451C(1), 86–1552C(1).

United States District Court, E.D. Missouri.

Feb. 19, 1987.

Myron Gollub, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, Chief Judge.

The plaintiff, Robert E. Vicor, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2200e *et seq.* and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 (ADEA). The plaintiff alleges that he was denied a promotion on account of his age and national origin.

This case was tried to this Court sitting without a jury. This Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. *Fed.R.Civ.P.* 52.

## FINDINGS OF FACT

1. The plaintiff, Robert E. Vicor, was born on September 29, 1930. The plaintiff is an Hispanic of Mexican national origin.

2. The defendant, Major General Robert A. Rosenberg, is Director of the Defense Mapping Agency Aerospace Center (DMA) and is responsible for maintaining the regulations of the agency. The DMA is an agency of the United States Government and has offices located in St. Louis, Missouri.

3. Between August, 1967, and December 30, 1982, the plaintiff was employed by the DMA. In 1979, the plaintiff applied for a promotion to a position described by Position Vacancy Announcement # 37–79 (PVA # 37–39) in the Scientific Data Department of the DMA. The plaintiff also applied for a promotion to a position described by PVA # 26–79, also in the Scientific Data Department. The plaintiff was not promoted to either position. At the time he sought promotion, the plaintiff was a cartographer in the Cartography Department and served at GS–9.

4. In selecting applicants to fill PVA # 37–79, the DMA followed a two-step procedure. At the first step, applicants were rated and ranked. Next, the most qualified applicants received an interview. The plaintiff received a favorable rating at the first step and was granted an interview.

5. The plaintiff was interviewed by DMA employees John Buoncristiana and John Ploss. Both agency employees were non-Hispanic and over 40 years old. As Buoncristiani testified, the applicants were not reranked at the interview stage but were considered on an equal footing. A list of questions was prepared by the interviewers and asked of all interviewees. This Court credits the testimony of Buoncristiani.

6. The plaintiff was not offered a promotion to the position described by PVA # 37–79. Buoncristiani selected two non-Hispanic males, who at the time of their promotions were 41 and 50 years of age. At the time of these promotions, the plaintiff was 48 years of age. The plaintiff was not promoted to PVA # 37–79 because, in the opinion of Buoncristiani and Ploss, at least two other applicants were more highly qualified. The decision of the DMA to promote the plaintiff to PVA # 37–79 was based upon neither the plaintiff's age nor his national origin.

7. On September 5, 1979, the plaintiff filed an EEO complaint regarding his non-selection for PVA # 37–79. On April 4, 1980, the plaintiff filed an EEO complaint alleging discrimination in retaliation for his EEO activities. On May 1 and May 19, 1981, a hearing was held before a Complaints Examiner of the EEOC. The Complaints Examiner consolidated the plaintiff's retaliation complaints with his complaints regarding PVA # 37–79 and anoth-

er vacancy, PVA # 26–79. On August 20, 1981, the Complaints Examiner filed her recommended decision. The Complaints Examiner found that the plaintiff established a *prima facie* case regarding PVA # 37–79 and PVA # 26–79.

At the hearing, the DMA failed to present evidence regarding the reasons for the plaintiff's nonselection. Therefore, the Complaints Examiner found discrimination on the basis of "national origin and/or age" and recommended a promotion to GS–11, retroactive to February 13, 1979.

The agency believed that the plaintiff's complaint regarding PVA # 37–79 was not properly before the Examiner. Therefore, on November 2, 1981, the DMA rejected the Complaints Examiner's findings and recommended decision. On appeal to the EEOC Office of Review and Appeals, the EEOC reversed the DMA decision and reinstated the Complaints Examiner's decision.

8. On December 14, 1982, following the reversal of the DMA decision, the DMA promoted the plaintiff retroactively to a GS–11 position within the Cartography Department.

9. On December 30, 1982, the plaintiff was discharged from DMA service for unacceptable performance as a cartographer. This decision was appealed to the Merit Systems Protection Board and affirmed by the Board on August 3, 1983.

10. On July 20, 1984, the DMA dismissed the plaintiff's complaint regarding

PVA # 37–79, filed on September 5, 1979. On August 23, 1985, the EEOC upheld the DMA's dismissal, finding that the promotion awarded under the earlier complaint rendered the second complaint moot.

11. On August 27, 1985, the plaintiff received the final decision of the EEOC regarding his nonselection for PVA # 37–79. The plaintiff's *pro se* complaint was received by the Clerk of the Eastern District of Missouri on September 24, 1985, and provisionally filed, pending leave to file *in forma pauperis*. On October 15, 1985, the Honorable Robert D. Kingsland, United States Magistrate, granted the plaintiff leave to proceed *in forma pauperis*, and the case was assigned to this Court. On June 12, 1986, the plaintiff's request to reopen was denied by the EEOC. The plaintiff received the denial on July 2, 1986.

## CONCLUSIONS OF LAW

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 633a(c), and 42 U.S.C. §§ 2000e–5(f) and 2000e–16(b).[1]

The plaintiff brings this action under both Title VII and the ADEA. As an initial matter, this Court notes that this lawsuit concerns only the plaintiff's nonselection for PVA # 37–79.[2] This action does not concern the plaintiff's nonselection for other vacancies or his claims of retaliation. This action also does not concern the even-

---

**1.** As the defendant argues, the plaintiff failed to file this civil action within the 30 days of his receipt of notice of final EEOC action as required by 42 U.S.C. § 2000c–16(c). As the defendant notes, the plaintiff received notice on August 27, 1985; the Clerk of this Court received the plaintiff's complaint on September 24, 1985 and filed the complaint on October 15, 1985.

Under Fed.R.Civ.P. 3, a civil action is not commenced until the complaint is filed. In accordance with Fed.R.Civ.P. 5(e), papers and pleadings, including the original complaint, are considered filed when they are placed in the possession of the Clerk of the Court. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 1153 (1969); *see also Moffitt v. United States*, 430 F.Supp. 34, 36 (E.D.Tenn.1976) (complaint lodged in the clerk's office was filed with the

court within the applicable six month period of limitations under the Federal Tort Claims Act). Thus, for purposes of 42 U.S.C. § 2000e–16(c), the instant complaint was timely filed as of September 24, 1985.

**2.** Following the trial of Cause No. 85–2451, the plaintiff filed a second complaint, No. 85–1552. The second complaint differs from the first only in its allegations that the plaintiff requested reconsideration of his EEO complaint regarding PVA # 37–79 and that such request was denied by the EEOC. By consent of the parties, the Court has consolidated the plaintiff's two cases. The Court will construe the second complaint as amending the first to satisfy exhaustion requirements. The parties have stipulated and this Court concludes that the plaintiff exhausted his administrative remedies.

tual decision of the DMA to terminate the plaintiff.[3]

In a Title VII cause of action, the plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. If the plaintiff is successful, the defendant must then articulate a legitimate nondiscriminatory reason for its actions. In order to sustain this burden, the defendant need only present evidence which raises a genuine issue of fact as to whether it discriminated against plaintiff. The burden of producing evidence then shifts back to the plaintiff, who must show by a preponderance of the evidence that defendant's explanation was merely a pretext for discrimination within the meaning of the statute. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Tate v. Weyerhauser Co.,* 723 F.2d 598, 602 (8th Cir.1983); *Washington v. Dayton Hudson Corp.,* 610 F.Supp. 1120 (E.D.Mo.1985). Once defendant responds to plaintiff's proof by offering evidence of the reason for its actions, the presumption "drops from the case" and the Court must then determine whether there was discrimination within the meaning of Title VII. *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). The ultimate " 'factual injury' in a Title VII case is 'whether the defendant intentionally discriminated against the plaintiff'." *Id.* at 715, 103 S.Ct. at 1481, *citing Texas Department of Community Affairs,* 450 U.S. at 253, 101 S.Ct. at 1093. The plaintiff always retains the burden of persuasion with respect to this ultimate factual issue. The division of intermediate evidentiary burdens serves merely to allow the Court to evaluate more easily the evidence as it bears on the critical issue of discrimination. *Id.*

The elements of a *prima facie* case in a Title VII cause of action vary according to the particular claim that a plaintiff asserts. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973). Here, the plaintiff alleges disparate treatment as a basis for recovery. Disparate treatment occurs when an employer treats some people less favorably because of their national origin. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977). In the context of promotions, a *prima facie* case of disparate treatment requires the plaintiff to show

(i) that he belongs to a protected group; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

---

**3.** After the EEOC reversed the DMA decision not to promote the plaintiff, the DMA promoted the plaintiff to GS–11 within the Cartography Department. The plaintiff argues that this action was arbitrary and contrary to Department of Defense directives. As the plaintiff contends, he suffers from color blindness making work as a cartographer difficult. The plaintiff contends that he is better suited to work in the Scientific Data Department.

The plaintiff's arguments raise at least two issues: First, whether the DMA complied with the decision of the EEOC Complaints Examiner and, second, whether the DMA promoted the plaintiff to a proper position pursuant to Defense Department directives. The first issue was considered by the EEOC and dismissed on August 23, 1985. *See Findings of Fact No.* 10.

The EEOC dismissal accords with this Court's reading of the Complaints Examiner's recommendation. The Examiner recommended promotion to GS–11 but not to any particular position. The plaintiff received such a promotion within the Cartography Department. *See Findings of Fact No.* 8.

The second issue concerns the plaintiff's fitness as a cartographer and was considered by the Merit Systems Protection Board. The MSPB rejected the plaintiff's claim. *See Findings of Fact No.* 9. Neither the issues considered by the MSPB nor the issues considered by the EEOC regarding compliance are presently before this Court. The evidence at trial and the pleadings of the parties concern the promotion practices of the DMA only insofar as illegal discrimination is a motive.

*See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Netterville v. Missouri,* 800 F.2d 798, 802 (8th Cir.1986).

■ The plaintiff alleges that he was refused a promotion under PVA # 37–79 on the basis of his national origin. The plaintiff did not put on evidence at trial, relying instead upon the findings of the EEOC Complaints Examiner to establish a *prima facie* case. Such findings are admissible and are competent evidence sufficient to establish a *prima facie* case. *See Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961, 48 L.Ed.2d 416 (1976). The defendant did not substantially contest these findings. After a review of the record, this Court concludes that the plaintiff has established a *prima facie* case of disparate treatment based upon national origin. *See Findings of Fact Nos.* 6 and 7.

In defense of its decision not to promote the plaintiff to PVA # 37–79, the DMA argues that the applicants it hired for the positions were better qualified. The evidence presented at trial supports this argument, and the Court concludes that the defendant established a legitimate, nondiscriminatory reason for the plaintiff's nonselection. *See Findings of Fact No.* 6.

As the plaintiff argues, the DMA did not articulate the reasons for his nonselection with sufficient specificity. The plaintiff relies upon *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979). The portion of *Loeb* relied upon by the plaintiff merely recites the employer's burden of production after the plaintiff has established a *prima facie* case. The discussion of this burden is entirely consistent with the standard set out above. Here, the DMA has articulated an explanation sufficient to dispel the inference of discrimination arising from the proof of a *prima facie* case. In particular, the DMA put on credible evidence that other applicants were more highly qualified. This explanation satisfies the DMA's burden.

The plaintiff attempted to demonstrate that the defendant's proffered explanation serves as a pretext for illegal discrimination. As evidence of pretext, the plaintiff

notes that he was replaced by non-Hispanic, white employees.

This Court credits the testimony of Buonchristiani. During his interview, the plaintiff was asked the same questions as the other applicants. *See Findings of Fact No.* 6. Based upon all the applicants' answers, the plaintiff was adjudged less qualified and therefore was not selected. *See Findings of Fact No.* 6.

■ The plaintiff also asserts a claim of disparate treatment on the basis of age. The framework of burdens and presumptions used to analyze Title VII claims also applies to ADEA claims. *Holley v. Sanyo Manufacturing, Inc.,* 771 F.2d 1161, 1164 (8th Cir.1985). Thus, the Court applies the burdens and presumptions set out above in *McDonnell Douglas Corp.* In the context of promotions, a *prima facie* case of age discrimination follows the elements set out above in *McDonnell Douglas,* with age being the relevant consideration. *Id.*

■ As under his Title VII claim, the plaintiff relied upon the findings of the EEOC Complaints Examiner to establish a *prima facie* case. Based upon these findings, this Court concludes that the plaintiff has established a *prima facie* case. *See Findings of Fact Nos.* 6 and 7.

In defense of the ADEA claim, the defendant proffers the same explanation as under the Title VII claim—the other applicants were more highly qualified. In large part, the defendant relies upon the evidence presented on the Title VII claim. In addition, the defendant notes that, at 41 and 50 years of age, the employees selected for PVA # 37–79 were also members of the protected class. *See Findings of Fact No.* 6. Furthermore, the interviewers themselves were over forty years of age. *See Findings of Fact No.* 5.

This Court concludes the the defendant offers a legitimate, nondiscriminatory explanation for the plaintiff's nonselection. *See Findings of Fact No.* 6. The Court further concludes that the plaintiff has not rebutted this explanation. The record reveals no evidence that age was a determin-

ing factor in the defendant's decision not to promote the plaintiff.

In sum, the defendant has succeeded in articulating nondiscriminatory reasons for the plaintiff's nonselection. The plaintiff has failed to rebut this explanation and, thus, failed to demonstrate that age or national origin were considered by the defendant in reaching its decision. Accordingly, judgment is entered for the defendant on the plaintiff's complaint.

