Dalmer RADEMAKER, Bill
Dittmer, Appellees,

v.

STATE OF NEBRASKA, Appellant.

Nos. 89–2437NE, 89–2557NE.

United States Court of Appeals,
Eighth Circuit.

Argued June 13, 1990.

Decided July 16, 1990.

Douglas J. Peterson, Asst. Atty. Gen., Lincoln, Neb. (Robert M. Spire, Atty. Gen., Lincoln, Neb., on the brief), for appellant, State of Neb.

Carole McMahon–Boies, Lincoln, Neb. (Pepperl & McMahon–Boies, P.C., Lincoln, Neb., on the brief), for appellees Dalmer Rademaker and Bill Dittmer.

Before JOHN R. GIBSON, HEANEY and TIMBERS *, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant State of Nebraska appeals from two orders entered September 5, 1989, in the District of Nebraska, Warren K. Urbom, *District Judge*, denying motions to enter judgments n.o.v. or, in the alternative, to order new trials, with respect to judgments entered on jury verdicts in favor of appellees Dalmer K. Rademaker and Bill Dittmer, respectively.

In verdicts returned June 21, 1989, the jury determined that the State was liable to both appellees for discriminatory discharge due to age, pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (1988). The jury further found that the discrimination against both appellees was willful. On July 31, 1989, the court entered judgments on both verdicts and ordered the State to reinstate both men with full seniority. The court also awarded liquidated damages, backpay and accrued benefits totaling $145,704.38 and $168,932.42 to Rademaker and Dittmer, respectively. It further determined that appellees each were entitled to attorney's fees in the amount of $11,592.

On this consolidated appeal, the State argues (1) that there was insufficient evidence to support the finding of age discrimination; and (2) that there was insufficient evidence to support the finding of willful violations of the ADEA. For the reasons which follow, we affirm the orders of the district court in their entirety.

* Of the Second Circuit, sitting by designation.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Rademaker and Dittmer both were employed by the Department of Public Institutions ("DPI"), an agency of the State. Rademaker worked in the Budgets and Grants Division of DPI, in a position entitled "Auditor II." His primary responsibilities were to conduct audits of DPI's various programs. Dittmer worked in the Engineering Division, in a position entitled "Maintenance Consultant." His responsibility, consisting of several smaller tasks, was to coordinate the physical maintenance of DPI's facilities throughout the state. It is stipulated that both men performed their work competently.

The chain of events leading to this appeal began in 1986. In that year, the Nebraska Legislature, facing a budget deficit, ordered many state agencies to reduce spending. The Legislature targeted DPI for a reduction of about $58,000 in fiscal year 1987–88. Dale Johnson, the Director of DPI, responded with a proposal to meet that mandate. In a memorandum dated December 5, 1986, he proposed continuing from the previous fiscal year the reduction in the custodial staff (0.5 of a full-time position) and continuing the elimination of one full-time Program Specialist. He further proposed eliminating one "FTE professional position" by attrition. Johnson estimated that the resulting savings would amount to $58,894.

DPI never filled the custodial and Program Specialist positions. It realized savings of $40,939 as a result. The record does not indicate whether the "FTE professional position" was eliminated permanently. According to Johnson's trial testimony, however, the position had not been filled when Rademaker and Dittmer were discharged. That position carried a salary of approximately $22,000. DPI accordingly met the legislative target without regard to appellees.

Johnson, however, decided that further reductions were in order. The following sequence of events is viewed in the light most favorable to appellees. Johnson, looking through the DPI directory (which showed the employees' birth dates) in April 1987, identified appellees and others as the targets for further reductions. At a meeting on April 6, Johnson and his aides tentatively decided that appellees would be the ones to be discharged. They requested input from the division supervisors before reaching a final decision. Rademaker's supervisor was not enthusiastic about keeping him, but did state that the Auditor II position should be retained if possible. Dittmer's supervisor was more emphatic about retaining both the Maintenance Consultant position in general and Dittmer in particular. He stated that, if it proved necessary to make a cut in the Engineering Department, another position should be considered.

Johnson conceded at trial that the division supervisors were far more knowledgeable about appellees' day-to-day activities and the overall value of the two positions. Despite the supervisors' recommendations, however, Johnson and his advisors, at a meeting on April 13, decided to fire the two men and eliminate their positions. Dittmer's responsibilities were divided among remaining employees and Rademaker's responsibilities were eliminated. The action reduced the payroll by an additional $54,-000.

Rademaker, who was 62 years old at the time, and Dittmer, who was 59, were the two oldest non-clerical DPI employees working in the DPI central office. At the April 13 meeting, Johnson's deputy told him that, due to the circumstances of the layoff, appellees might commence an age discrimination suit. Johnson testified at trial that he responded by saying that "I wasn't going to allow a law to prevent me from doing what was best for the State of Nebraska."

Based on the foregoing, the jury found that, as appellees claimed, the State had violated the ADEA when it fired Rademaker and Dittmer. It further found that, based on Johnson's conduct, the discrimination was willful. The district court, as stated above, entered judgments on the verdicts, and denied the State's motion for judgments n.o.v. or, in the alternative, for new trials.

This appeal followed.

## II.

Before we reach the merits of this appeal, we shall state the appropriate standard of review. It is a familiar principle that a judgment entered on a jury verdict should be affirmed if, viewing the evidence in the light most favorable to appellees, reasonable persons could differ as to the proper conclusion. *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1164 (8th Cir.1985); *Gilkerson v. Toastmaster, Inc.*, 770 F.2d 133, 136 (8th Cir.1985).

This deferential standard carries a specific meaning in the context of an age discrimination action—one which has been defined by several of our opinions. The nature of our review is indicated by contrasting it with the plaintiff's burden of proof at trial as set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Hall v. American Bakeries Co.*, 873 F.2d 1133, 1134 (8th Cir.1989) (applying *McDonnell Douglas* to ADEA cases).

■ To demonstrate liability for an ADEA violation at trial, a plaintiff must establish by a preponderance of the evidence a prima facie case. The defendant then has the opportunity to rebut that with proof that its actions were taken for legitimate, nondiscriminatory reasons. If it does so, the plaintiff has a final opportunity to show that the proffered justification was pretextual. *Morgan v. Arkansas Gazette*, 897 F.2d 945, 948 (8th Cir.1990) (citing *Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 357 (8th Cir.1987)).

■ On review of a judgment entered on a verdict favorable to plaintiff, however, the *McDonnell Douglas* presumptions "fade away," *Barber v. American Airlines, Inc.*, 791 F.2d 658, 660 (8th Cir.), *cert. denied*, 479 U.S. 885 (1986), and the

task of the appellate court "is simply to decide whether the record supports the ultimate finding of discrimination." *MacDissi v. Valmont Industries, Inc.*, 856 F.2d 1054, 1057 (8th Cir.1988) (citing *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714–16 (1983)).

### III.

In light of the foregoing, we turn first to the question whether the "ultimate finding" of age discrimination here is supported by the record.

Our review of the record satisfies us that, viewed in the light most favorable to appellees, there is sufficient evidence to support the verdict. Perhaps the best way to demonstrate this is to compare the instant case to *Holley, supra*, upon which the State relies heavily. In *Holley*, we reversed a judgment in favor of the plaintiff, holding that there was insufficient evidence of age discrimination based on the record. Holley was a senior employee at defendant's factory. Pursuant to a broad reduction-in-force at the factory, 8 of the 31 salaried employees in Holley's department, including Holley, were laid off. Only two of the eight, however, were over 40, the age at which ADEA protection begins (Holley was 52). Thus the layoff actually raised the average age of employees in the department. Holley's argument, we observed, was merely that his responsibilities had been assumed by a younger man. We held that that evidence, standing alone, was insufficient to support a finding of age discrimination. *Holley, supra*, 771 F.2d at 1166–68.

█ The contrasts between *Holley* and the instant action are significant. Here, appellees, each the oldest in his respective department, were the only employees laid off. There was evidence to support the inference that they were singled out and that pretextual justifications for their termination were found after the decision to terminate was made. Significantly, the process that led to the firing of appellees took little more than one week. One might expect that a decision leading to the termination of two competent senior employees

would be supported by a more in-depth investigation. The lack of such an investigation may well have supported the jury's inference that Johnson's motives were not legitimate.

The State contends that, despite the above standard of review, "a general evaluation of [the *McDonnell Douglas*] stages is helpful in determining whether or not the record as a whole supports the ultimate finding of discrimination." Having advanced this contention, the State follows up with the claim that appellees failed to prove one element of their prima facie case, i.e., that when the discharge is due to a legitimate reduction-in-force (layoffs due to economic reasons), evidence of a discriminatory motive is necessary. Indeed, we have indicated that such a showing may be an essential element of the prima facie case when those conditions are present. *Hillebrand v. M–Tron Industries, Inc.*, 827 F.2d 363, 367 (8th Cir.1987), *cert. denied*, 109 S.Ct. 782 (1989); *Holley, supra*, 771 F.2d at 1165–66.

We need not decide, however, whether our deferential standard of review permits us to revisit the question whether appellees met their burden at the prima facie stage under *"Holley'*s more rigorous standards", *Hillebrand, supra*, 827 F.2d at 367, for in any event the State has failed to establish an element essential to those standards, i.e., that appellees were terminated pursuant to a legitimate reduction-in-force. Indeed, there is ample evidence that, due to the earlier cutbacks, the terminations of Rademaker and Dittmer were economically unnecessary. *Cf. id.* at 367–68 (*Holley* inapplicable when claimed reduction-in-force was pretextual).

Our holding should not be construed as forbidding the director of a state agency from eliminating redundant jobs when those reductions go further than required by the agency's budget, simply because older workers are the ones who are victimized. We have stated that it is "undeniably true that the ADEA does not empower courts to choose which business strategies should be implemented or which employees hired or fired." *MacDissi, supra*, 856 F.2d

at 1059 n. 4. Our deference to business judgment, however, stops short of permitting age discrimination. *Id.; see also Neufeld v. Searle Laboratories,* 884 F.2d 335, 340 (8th Cir.1989) ("the essence of the factfinder's duty in an age-discrimination case [is] to decide whether the employer's proffered reason for discharge was its actual motivation."). Since there was sufficient evidence that appellees were fired because of their age, rather than their abilities, or the redundancy of their positions, we affirm the finding that their termination violated the ADEA.

## IV.

We turn next to the question whether the jury's award of liquidated damages is supported by the record. The ADEA provides for liquidated damages for willful violations of the Act. 29 U.S.C. § 626(b) (1988). That provision, which doubles the compensatory award, is essentially punitive in nature. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125 (1985). It is applicable, therefore, only when the employer intentionally violated the ADEA or acted in reckless disregard of its provisions. *Id.* at 128; *Tolan v. Levi Strauss & Co.,* 867 F.2d 467, 471 (8th Cir.1989). Liquidated damages are not warranted merely because an employer knows that the ADEA may be "in the picture" when an older employee is discharged. *Thurston, supra,* 469 U.S. at 127–28; *Morgan, supra,* 897 F.2d at 952. A good-faith effort to comply with the ADEA will defeat a claim for liquidated damages.

Appellees do not contend that the State, acting through Johnson, intended to violate the ADEA. Rather, they contend that they were discharged in reckless disregard of the statute. *Thurston* makes clear that a finding to that effect requires additional evidence beyond that required to prove the underlying discrimination. 469 U.S. at 128; *Bethea, supra,* 827 F.2d at 359.

The "additional evidence" in the instant appeal was Johnson's trial testimony that "I wasn't going to allow a law to prevent me from doing what was best for the State

of Nebraska." The State contends that no reasonable jury could have found reckless disregard of the ADEA on the basis of that statement. We disagree.

The standard definition of recklessness is acting without regard to the consequences in the face of a known or obvious risk. Prosser & Keeton, The Law of Torts § 34, at 213 (5th ed. 1984). Johnson's conduct satisfies these elements. As a threshold matter, we observe that Johnson, as the Director of DPI, had the authority to discharge appellees. The jury could have inferred that his statement accurately reflected the circumstances under which Rademaker and Dittmer were discharged. Next, the warning by Johnson's deputy indicates Johnson's awareness of the risk that his actions would violate the ADEA. Finally, Johnson's statement indicates disregard for the consequences of his actions.

The State's contention that Johnson's testimony was insufficient to support an award of liquidated damages is further undercut by our opinion in *Neufeld.* We held in *Neufeld* that the statements of a single employer constituted a showing of "age-based animus" sufficient to merit a liquidated damage award. 884 F.2d at 340–41.

We are mindful that Johnson's statement does not present the clearest possible evidence of willfulness under § 626(b). As we stated in section II of this opinion, however, our task in reviewing a judgment entered on a jury verdict is simply to inquire whether, viewed in the light most favorable to appellees, the evidence adduced at trial supports the verdict. The jury chose to take Johnson's statement at face value. We fail to find reversible error in that choice.

## V.

To summarize:

We hold that the jury verdicts in favor of Rademaker and Dittmer, with respect to liability both for age discrimination and for willful violation of the ADEA, are supported by the record viewed in the light most favorable to appellees. We therefore affirm the orders of the district court de-

**1314**

clining to grant the State's motions for judgment n.o.v. or, in the alternative, for a new trial.

Affirmed.