John LEIDIG, Plaintiff,

v.

HONEYWELL, INC., Defendant.

No. 3–92 CIV 544.

United States District Court, D. Minnesota, Third Division.

May 4, 1994.

Peterson, Connor & Satre by Eric D. Satre, and Patrick M. Connor, Minneapolis, MN, for plaintiff.

Paul W. Day, Minneapolis, MN, for defendant.

## ORDER

ALSOP, Senior District Judge.

This matter came before the Court on January 21, 1994, on the defendant's motion for summary judgment. In this employment discrimination action, John Leidig alleges that Honeywell, Inc., ("Honeywell") discriminated against him on the basis of his age. Honeywell argues that it is entitled to summary judgment because each of Leidig's claims fail as a matter of law.

## I. BACKGROUND

The defendant, Honeywell, is a publicly-owned company involved in, among other things, providing products and services for aviation and space businesses. The aviation and space business section at Honeywell is divided into several divisions, including the Military Avionics Division ("MAvD") in Minneapolis, Minnesota. MAvD was previously divided into several departments, including the Test Systems Operation and the Flight Systems Operation.

The plaintiff, Leidig, began working at Honeywell in 1967 and eventually advanced within MAvD to the position of chief engineer in the Flight Systems Operation. In 1989, the Flight Systems Operation and the Test Systems Operation were merged into the Flight Systems and Test Operations ("FSTO"). This merger eventually resulted in the elimination of Leidig's position in 1990, and on June 28, 1991, Leidig was laid off. Under the Honeywell severance program in effect at that time, Leidig received full pay and benefits through March 6, 1992.

From 1986 to 1992, MAvD operations in Minneapolis reduced it workforce from fifty-five hundred to twenty-five hundred employees. The primary cause of these lay-offs was a reduction in military contract work. To implement the lay-offs, employees were placed on a "totem," or ranked, on the basis of their qualifications and length of service. An employee's qualifications included, among other things, performance and flexibility. Because Leidig was ranked sixth out of six employees on his totem, he was placed on a "surplus list" and eventually laid off.

After Leidig's position was eliminated at FSTO, he began looking for a lateral position at other domestic and international Honeywell divisions. Leidig had several friends working at Honeywell's Air Transport Systems Division ("ATSD") in Phoenix, Arizona, and these friends encouraged him to apply for a position at that facility. ATSD is similar to MAvD, but its focus is on commercial, rather than military, aviation. ATSD had also recently experienced substantial growth. However, the workload at ATSD began to slow down in 1991 due to decreased commercial airline business.[1]

---

1. Leidig, in his affidavit, states that ATSD "was in a phase of explosive growth during 1990 and 1991," (Leidig Aff. ¶ 5), but offers no evidence in support of this conclusion. This testimony fails to meet the requirements of Rule 56, which states that "opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence." Fed. R.Civ.P. 56(e). Allegations and conclusory statements are insufficient to preclude summary judg-

Leidig contacted Fred Milici, ATSD's Director of Technology Support, and arranged to go to Phoenix for an interview in May of 1991. During this visit, Milici told Leidig that there were approximately ten non-supervisory positions open in his department. One of Leidig's friends, Ralph Pamperin, also told him of three open positions for which he was qualified. Leidig thought the interview went well and expected to receive a job offer. However, after Leidig returned to Minneapolis, Clyde Birch, ATSD's Human Resources Specialist, told him that he would not be offered a position. Birch also said that ATSD had a preference for local or internal employees.

Leidig brought this action on August 13, 1992. In his complaint, Leidig asserts claims for age discrimination in violation of the federal Age Discrimination in Employment Act (Count 1), negligent retention, and negligent supervision (Count 2).

On December 23, 1993, Honeywell filed this motion for summary judgment, along with its supporting memorandum. On December 29, four months after the close of discovery, Leidig's counsel filed a motion to compel additional discovery and scheduled a hearing on February 14, 1994 before the magistrate judge.[2] Because Leidig's motion to compel was unresolved at the time this Court heard oral argument on Honeywell's summary judgment motion, the Court agreed to keep the record open following oral argument. The Court also stated that, if the magistrate judge ordered additional discovery, Leidig would have twenty days after the production of that discovery to submit additional argument. (Tr. 1/21/94 Hr'g at 26–27.)

On February 14, the magistrate judge granted Leidig's motion to compel in part and ordered Honeywell to produce additional discovery by March 1. By stipulation and order, this deadline was later extended to March 8. As of the date of this opinion, Leidig has not filed any additional submissions.

## II. ANALYSIS

### A. The Summary Judgment Standard

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hegg v. United States*, 817 F.2d 1328, 1331 (8th Cir.1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The test for whether there is a genuine issue over a material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512; *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Second, any dispute

---

ment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Dunavant v. Moore*, 907 F.2d 77, 80 (8th Cir.1990).

Similar deficiencies occur throughout Leidig's affidavit and memorandum. Leidig's affidavit appears to be nothing more than a verbatim recitation of the first eleven pages of the statement of facts from his memorandum. Apparently, counsel simply single-spaced the statement of facts, changed the third-person references of "Leidig" and "he" to the first-person "I" and "me," and submitted it to Leidig for his signature. Much of the affidavit consists of self-serv-

ing and conclusory statements, for which no evidentiary support is offered. This effort falls far short of the standards of good practice this Court expects from counsel. This conduct is especially difficult to accept in light of the fact that Leidig's counsel has previously been informed of the need for compliance with the requirements of Rule 56(e). *See Palm v. Marriott Management Servs. Corp.*, No. 3–92 CIV 597, slip op. at 3 n. 1 (D.Minn. Sept. 21, 1993).

2. In *Palm*, Leidig's counsel also responded to a summary judgment motion by filing a motion to compel additional discovery. *See* slip op. at 7.

over material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of his claim. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

### B. Age Discrimination

■ In Count 1, Leidig alleges that Honeywell discriminated against him on the basis of his age. This claim is brought under the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("the ADEA"), which makes it unlawful for an employer to discharge an employee because of his or her age. 29 U.S.C. § 623(a).[3]

Leidig is apparently asserting claims under both the disparate impact and the disparate treatment theories of discrimination. Leidig claims that the criteria used by Honeywell to implement the reduction-in-force that led to his lay-off at MAvD had a disparate impact on older workers. Leidig also claims that the criteria used for hiring employees at ATSD had a disparate impact on older workers. Finally, Leidig claims that he was subjected to disparate treatment because of his age when Honeywell dismissed him from MAvD rather than offering him a lateral position at ATSD.[4] Remarkably, in an age discrimination lawsuit, Leidig also chastises Honeywell for failing to even consider his age before terminating him. (Pl.'s Resp.Mem. at 5.)

Initially, the Court expresses some doubt about the viability of an ADEA disparate impact claim. The Supreme Court recently stated that it has "never decided whether a disparate impact theory of liability is available under the ADEA." *Hazen Paper Co. v. Biggins*, —— U.S. ——, ——, 113 S.Ct. 1701,

1706, 123 L.Ed.2d 338 (1993). In *Biggins*, Justice Kennedy wrote separately in a concurring opinion (joined by Chief Justice Rehnquist and Justice Thomas) for the sole purpose of emphasizing that "nothing in the Court's opinion should be read as incorporating in the ADEA context the so-called 'disparate impact' theory of Title VII." —— U.S. at ——, 113 S.Ct. at 1710. Justice Kennedy also cited authorities making "substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA." *Id.* Nonetheless, the Eighth Circuit has recognized ADEA disparate impact claims in pre-*Biggins* decisions. *See, e.g., Nolting v. Yellow Freight Sys., Inc.*, 799 F.2d 1192, 1194 (8th Cir.1986); *Leftwich v. Harris–Stowe State College*, 702 F.2d 686, 690 (8th Cir.1983). Therefore, the Court will assume for the purposes of this motion that such a claim is cognizable.

#### 1. *Disparate Impact*

Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive . . . is not required under a disparate-impact theory." *International · Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Underlying this theory of liability is the premise "that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987, 108 S.Ct. 2777, 2785, 101 L.Ed.2d 827 (1988).

■ To establish a prima facie case of disparate impact discrimination, a plaintiff must demonstrate that a specific employment

---

3. Leidig's complaint also lists Title VII of the Civil Rights Act of 1964 as a statutory basis for his age discrimination claim. *See* 42 U.S.C. §§ 2000e to 2000e–17. Title VII makes it unlawful for an employer to discharge an employee because of his or her "race, color, religion, sex, or national original." 42 U.S.C. § 2000e–2(a)(1). Leidig has not alleged discrimination on the basis of any of these protected statuses.

Therefore, the Court will not address such a claim.

4. Although the precise nature of Leidig's claims is difficult to discern from his complaint and motion papers, the Court believes that these three claims accurately summarize Leidig's allegations of discrimination.

practice or policy has a significant discriminatory impact on a protected group. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656, 109 S.Ct. 2115, 2124, 104 L.Ed.2d 733 (1989). Normally, this showing will be made with the use of statistics. *Id.* at 650, 109 S.Ct. at 2121. If a plaintiff is able to establish a prima facie case, the burden of production then shifts to the employer to produce evidence demonstrating a "business justification" for the challenged practice or policy. *Id.* at 658, 109 S.Ct. at 2125. "The burden of persuasion, however, remains with the disparate-impact plaintiff." *Id.* at 659, 109 S.Ct. at 2126.[5] If the employer is able to present a business justification defense, a plaintiff may still prevail if he or she is able to show that other practices or policies would also serve the employer's legitimate business interests. *Id.* at 660, 109 S.Ct. at 2126. By making this showing, the plaintiff could prove that the employer was using its practices or policies as a pretext for discrimination. *Id.*

### a. The MAvD Reduction–In–Force Criteria

■ Leidig first claims that the reduction-in-force that led to his lay-off at MAvD had a disparate impact on older workers because "flexibility" was one of the criteria used in determining which employees to retain.[6] In support of this claim, Leidig argues that "[b]asing termination decisions on the 'flexibility' of the employees is age biased. Older, higher paid, higher management, employees would not be considered 'flexible' enough. Reliance on 'flexibility' resulted in the termination of older employees and the retention of younger employees." (Pl.'s Resp.Mem. at 21.)

As previously explained, a prima facie disparate impact case is normally established with the use of statistics. *Wards Cove*, 490 U.S. at 650, 109 S.Ct. at 2121. In support of his claim, Leidig has introduced Honeywell documents demonstrating that thirty percent of MAvD employees who were over fifty years old on January 1, 1988 "remained employed" in May of 1993, while seventy percent of MAvD employees who were under fifty years old on January 1, 1988 remained employed in May of 1993. This evidence is insufficient to establish a prima facie case for numerous reasons: first, Leidig offers no evidence or explanation of statistical significance, *see Watson*, 487 U.S. at 996–97, 108 S.Ct. at 2790; *Ottaviani v. State Univ. of New York at New Paltz*, 875 F.2d 365, 371 (2d Cir.1989), *cert. denied*, 493 U.S. 1021, 110 S.Ct. 721, 107 L.Ed.2d 740 (1990); *Morgan v. Harris Trust and Sav. Bank of Chicago*, 867 F.2d 1023, 1028 (7th Cir.1989) (per curiam); *Simpson v. Midland–Ross Co.*, 823 F.2d 937, 944 (6th Cir.1987); second, Leidig fails to demonstrate any causal connection between his statistics and the challenged employment practice (the use of "flexibility" as a criterion), *see Wards Cove*, 490 U.S. at 656–57, 109 S.Ct. at 2124–25; *Watson*, 487 U.S. at 994, 108 S.Ct. at 2788; third, Leidig fails to explain how a comparison of all MAvD employees over fifty to all MAvD employees under fifty is relevant to the reduction-in-force at issue in this case, *see Wards Cove*, 490 U.S. at 650–51, 109 S.Ct. at 2121–22; *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1430 (10th Cir.1993); *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1167 (8th Cir.1985); and, fourth, Leidig fails to eliminate obvious non-discriminatory explanations, such as retire-

---

5. The Civil Rights Act of 1991 (the "1991 Act") altered the burdens of proof set forth in *Wards Cove* for disparate impact cases. Under the 1991 Act, employers now have the burdens of production and persuasion in demonstrating a business justification defense. This portion of the 1991 Act, however, amended Title VII, and its applicability to ADEA disparate impact cases remains an open question. *See, e.g., Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1429 n. 8 (10th Cir. 1993); *Fisher v. Transco Services–Milwaukee, Inc.*, 979 F.2d 1239, 1245 n. 4 (7th Cir.1992). Neither party in this case has suggested that the 1991 Act applies to Leidig's ADEA claim, and the Court does not believe application of the 1991

Act would affect the outcome of this decision. Therefore, the 1991 Act will not be considered.

6. At oral argument, Leidig's counsel also suggested that the whole reduction-in-force had a disparate impact on older employees because Honeywell was laying off in one division (MAvD) while it was hiring in another (ATSD). (Tr. 1/21/94 Hr'g at 18–20.) Leidig has offered no evidence in support of this claim. Furthermore, this claim does not appear to identify a "specific employment practice" as required by the Supreme Court's holding in *Wards Cove*, 490 U.S. at 656–57, 109 S.Ct. at 2124–25.

ment, for the numerical disparity, *see Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746 (10th Cir.1991); *Barnes v. GenCORP Inc.*, 896 F.2d 1457, 1466 (6th Cir.), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990); *Hervey v. City of Little Rock*, 787 F.2d 1223, 1228 (8th Cir.1986).[7]

■ Leidig has also introduced Honeywell documents demonstrating that MAvD FSTO "downgraded" employees over forty years old at higher rates than their younger counterparts between 1988 and 1992, that MAvD FSTO downgraded engineers over fifty years old at higher rates than their younger counterparts between 1990 and 1992, and that eighty-four percent of the employees hired at MAvD FSTO between 1988 and 1992 were under forty. Leidig does not define "downgraded," nor does he explain how these statistics are in any way relevant to the reduction-in-force that led to the elimination of his job. This evidence further suffers from all those deficiencies previously mentioned and is similarly insufficient to establish a prima facie case.

Leidig has not established a prima facie case of discrimination with respect to the use of "flexibility" as a criterion in Honeywell's reduction-in-force. Therefore, this disparate impact claim fails as a matter of law.[8]

### b. *The ATSD Hiring Criteria*

■ Leidig also claims that the hiring process at ATSD in Phoenix had a disparate impact on older workers because of ATSD's preference for "local" or "internal" ATSD employees. In support of this claim, Leidig argues that ATSD was established more recently than MAvD, and, therefore, ATSD employees were younger than MAvD employees. Because ATSD employees were younger, Leidig argues, its hiring preference for local or internal employees had a discriminatory impact on older workers. (Pl.'s Resp.Mem. at 21.)

Leidig offers no evidence in support of his assertion that ATSD was established more recently than MAvD, no evidence supporting his assertion that ATSD had a younger workforce, and no evidence suggesting that ATSD's preference for local or internal ATSD employees had any effect on the age of ATSD's workforce. Leidig has introduced documents demonstrating that ATSD placed sixty-two persons into supervisory or management positions during the period of January 1, 1990 through December 31, 1992. Of these sixty-two people, sixty-eight percent were under forty years old, thirty-two percent were forty or older, and six percent were over fifty years old. Leidig offers no evidence explaining how many of these people were "local" or "internal." These raw percentages further suffer from the same statistical defects as Leidig's previous offerings and are insufficient to establish a prima facie case. Because Leidig is unable to establish a prima facie case with respect to ATSD's hiring criteria, this disparate impact claim also fails as a matter of law.

### 1. *Disparate Treatment*

In a disparate treatment claim, "[t]he employer ... treats some people less favorably than others because of their race, color, religion, sex, or [other protected status]." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). "[L]iability depends on whether the protected trait (under the ADEA, age) actually mo-

---

7. Leidig's use of a comparison of employees over the age of fifty to employees under the age of fifty in support of an ADEA disparate impact claim is also troublesome, since the ADEA confers protected status on anyone forty or older. *See Lowe v. Commack Union Free Sch. Dist.*, 886 F.2d 1364, 1372–73 (2d Cir.1989), *cert. denied*, 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). However, in light of the numerous other deficiencies in Leidig's statistical offering, the Court does not reach this issue.

8. In support of its motion for summary judgment, Honeywell offered the affidavit of Dr. Den-

nis Ahlburg, a professor of quantitative methods and labor economics at the University of Minnesota Carlson School of Business. Dr. Ahlburg compared the percentages of FSTO managers under the age of forty who were laid off during 1991 with FSTO managers forty or older who were laid off during 1991 and "concluded that there was no statistically significant difference in the percentages laid off." (Ahlburg Aff. ¶ 7.) Because Leidig is unable to establish a prima facie case with his own statistical evidence, the Court does not need to address Dr. Ahlburg's analysis.

tivated the employer's decision." *Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). "Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Teamsters,* 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15.

■ In the absence of direct evidence, ADEA disparate treatment claims are evaluated under the three-step analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). *See, e.g., Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1108 (8th Cir.1994); *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1242 (8th Cir.1991).[9] Under this three-step analysis, a plaintiff must first establish a prima facie case of discrimination. The burden of production then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant articulates a nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to prove that this justification is merely a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825. The plaintiff retains the burden of persuasion at all times and must convince the trier of fact by a preponderance of the evidence that he was the victim of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981).

■ Leidig argues that Honeywell discriminated against him on the basis of his age by laying him off from MAvD rather than offering him a position at ATSD. Normally, to establish a prima facie case of disparate treatment under the ADEA, a plaintiff must show that he is a member of the protected age class, that he was performing adequately in his job, that he was fired, and that he was replaced by a younger person after his dismissal. *Gaworski,* 17 F.3d at 1109; *Lowe v. J.B. Hunt Transp., Inc.,* 963 F.2d 173, 174 (8th Cir.1992). However, when the plaintiff's discharge takes place in the context of a reduction-in-force, the fourth element is modified because the plaintiff's position will normally not be filled due to the nature of a reduction-in-force.[10] Therefore, to establish a prima facie case of age discrimination in a reduction-in-force termination, a plaintiff is required to make "some additional showing" that age was a factor in the employer's decision to eliminate his position. *Kehoe v. Anheuser–Busch, Inc.,* 995 F.2d 117, 119 (8th Cir.1993); *Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1165 (8th Cir. 1985).[11]

■ Honeywell does not dispute that Leidig was a member of the protected age class, that he was performing adequately, or

9. Neither party has suggested that this case involves direct proof of discriminatory intent, which would make the *McDonnell Douglas* analysis unnecessary. *See Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985); *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 726 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).

10. Leidig argues that the MAvD reduction-in-force was a "sham" because the division continued to remain profitable during and after the layoffs. Leidig does not dispute, however, that MAvD experienced a large decline in business operations and a reduction in revenue during these years. The ADEA does not require that an employer begin losing money before it can implement a legitimate reduction-in-force.

11. In *Leichihman v. Pickwick Int'l,* 814 F.2d 1263 (8th Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987), the Eighth Circuit approved a jury instruction that set forth five separate elements for a prima facie case in a reduction-in-force, discriminatory discharge claim. In *Leichihman,* the jury was instructed that the plaintiff had to show that he was in the protected age class, that he was performing adequately, that he was fired, that his job in its various parts continued in existence, and that his age was a determining factor. *Id.* at 1268; *see also Johnson,* 931 F.2d at 1242–43. Honeywell argues that this five-element prima facie case should be applied in this action. The Court disagrees. The required prima facie proof in any case will vary with the factual nature of the claim. *Leichihman,* 814 F.2d at 1269 (citing *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13). The Court concludes that the fourth *Leichihman* element, that the plaintiff's job in various parts continued to exist after he was fired, is inappropriate in this case, where there is no claim that Leidig's responsibilities were divided up among younger employees.

that he was fired. Therefore, to establish a prima facie case of age discrimination, Leidig must make "some additional showing" from which a fact-finder could infer that age was a factor in Honeywell's decision to lay him off from MAvD rather than offer him a position at ATSD. This additional showing could take "many forms" and will often be made with statistical or circumstantial evidence. *Holley*, 771 F.2d at 1166.

■ Leidig argues that "[i]n this case, the additional showing is established by two aspects: the statements overtly reflecting age bias and the decision to eliminate the oldest employees." (Pl.'s Resp.Mem. at 20.) Unfortunately, Leidig never describes these alleged statements or tells this Court who made them. Likewise, Leidig never says who was responsible for the alleged decision to eliminate the oldest employees. The Court was unable to find anything in Leidig's materials supporting his assertion that any such statements or decisions were ever made.

Leidig has also introduced various Honeywell documents, policies, and reports in support of his disparate treatment claim.[12] As previously explained, some of these documents demonstrate that sixty-eight percent of the individuals ATSD placed into supervisory or management positions during the period of January 1, 1990 through December 31, 1992 were under forty years old. Even if Leidig demonstrated the significance of this statistic, he has offered no evidence suggesting that he was qualified for all of these jobs or even that he should have been considered for all of these jobs. This statistic, by itself, has no probative value and does not raise an inference of discrimination.

■ Similarly, the fact that ATSD had some positions open when he was applying does not suggest that Honeywell discriminated against him. Alfred Milici told Leidig that there were approximately ten non-supervisory positions open at the time of his interview. However, Milici later testified that, to the best of his knowledge, none of these positions was ever filled because of the business downturn. Moreover, the three open positions Ralph Pamperin described to Leidig have never been identified by him. No information has been provided to the Court with respect to whether these three positions were ever filled or the ages of the employees who filled them.

■ Leidig also argues that Honeywell violated some of its own company policies by not offering him a position at ATSD. Honeywell's Human Resource Guide No. 7.2 states that, when a workforce reduction becomes necessary, department managers are to identify surplus employees according to their performance levels after "consideration" of a variety of factors. Among these considerations is the treatment of "Long-Service Older Employees." Department managers are told to "[a]void laying off employees whose age plus twice their years of service is equal to or greater than 80" and "[c]onsider transfer, reassignment, early retirement, pre-retirement leaves of absence, etc." This procedure is reiterated in Honeywell's Personnel Practices and Procedures No. W–4 ("Work Force Reduction and Recall"). The Human Resource Guide further instructs managers to "[c]onsider placing qualified surplus employees in positions within the business unit occupied by employees with shorter service" and "[w]henever appropriate or practical, return [recently transferred] employees to their former organization to help ensure retention of the best performers and longest service employees." "Whenever possible," managers are also instructed to "coordinate application of workforce reduction policies and practices within certain cities (i.e., Boston, Minneapolis, Phoenix, etc.)."

---

12. These documents are summarized in pages 6–11 of Leidig's memorandum. Copies of these documents were marked with exhibit stickers and submitted with the memorandum. Leidig's memorandum, however, does not reference these documents by their exhibit numbers (with only two exceptions). Instead, the memorandum frequently references these documents by the "Bate Stamp" numbers Honeywell assigned to them during discovery. Other documents are referenced only by a descriptive phrase or abbreviation. The Court was thereby left with the unpleasant task of searching through a stack of loose papers to match up individual documents and decipher counsel's abbreviations.

Although Leidig qualified as a Long–Service, Older Employee, this status did not guarantee him job security under Honeywell's company policies. Generally, "[w]hen an employer reduces its work force for economic reasons, it incurs no duty to transfer the employee to another position within the company." *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 942 n. 6 (6th Cir.1987). Honeywell's policies state only that status as a Long–Service, Older Employee was one of the factors a manager should consider when identifying surplus employees. Honeywell complied with these policies when it ranked Leidig and the other employees based on performance, flexibility, and seniority. Even with seniority factored into the totem, however, Leidig still ranked sixth out of six. Honeywell also provided assistance to Leidig, through its Human Resources Department, in his search for a lateral position at other international and domestic Honeywell divisions. By Leidig's own admission, he also received "extraordinary support" in his job search from three members of ATSD's management. (Pl.'s Resp.Mem. at 4.) Leidig has offered no evidence suggesting that Honeywell violated any of its own company policies or that older employees were treated unfairly under these policies.

In his memorandum, Leidig also states that he "held good appraisals at the MAvD Chief Engineer level, a level equivalent to Director at ATSD. The two ATSD persons promoted to these noted manager levels [for which Leidig claims he was qualified] held recent appraisals that rated them both as 'not ready for promotion' to the next level—a level two levels below [Leidig's] satisfactory performance rating." (Pl.'s Resp.Mem. at 8.) In support of this assertion, Leidig has submitted performance appraisals for the two individuals to whom he is presumably referring. The Court has reviewed these two performance appraisals and is unable to find the phrase "not ready for promotion" or any ranking two levels below satisfactory in either of them. Leidig also failed to submit any of his own performance appraisals, so the Court has no basis for comparison.

Leidig also asserts that Clyde Birch, the Human Resources Specialist at ATSD, "testi-fied that part of the reason for discontinuing consideration of [Leidig]'s candidacy was the fact that [Leidig] had admitted to Ron Heinz that he was thinking of filing an EEOC charge." (Pl.'s Resp.Mem. at 16) (citing Birch Dep. at 45). This assertion is, at best, a distortion of the record and, at worst, a misrepresentation. Furthermore, Leidig has not brought a claim for retaliation, *see* 29 U.S.C. § 623(d), so this assertion, even if accurate, would provide little support for Leidig's discrimination claim.

 Finally, Leidig is apparently also arguing that MAvD's use of flexibility as a criterion for layoffs and ATSD's preference for local or internal employees constituted intentional acts of discrimination. This argument is foreclosed by the Supreme Court's decision in *Hazen Paper Co. v. Biggins*, —— U.S. ——, ——, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993). In *Biggins*, the Supreme Court held that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." Therefore, even if Leidig's "dismissal [was] based on a factor empirically correlated with age," that "does not constitute discriminatory treatment on the basis of age under the ADEA." *Schibursky v. International Business Machs.*, 820 F.Supp. 1169, 1176 (D.Minn.1993) (citing *Biggins*, —— U.S. at ——, 113 S.Ct. at 1707); *see also Beith v. Nitrogen Prods., Inc.*, 7 F.3d 701, 703 (8th Cir.1993) (per curiam).

The Court finds that Leidig has failed to offer any evidence suggesting that his age was a factor in Honeywell's decision not to offer him a position at ATSD. Without this additional showing, Leidig cannot make out a prima facie case of age discrimination, and his disparate treatment claim fails as a matter of law.

## C. Negligent Retention

 In Count 2, Leidig alleges that Honeywell negligently retained employees after it knew or should have known of their propensity to engage in discriminatory behavior. This claim fails because Leidig has introduced no evidence suggesting that Honeywell knew that any of the employees involved in the decision to terminate him

from MAvD or not offer him a lateral position at ATSD had any propensity to discriminate on the basis of age or any other protected status. As previously explained, Leidig also failed to introduce any evidence suggesting that he was subjected to discriminatory treatment.

▮ This claim also fails because the discriminatory conduct Leidig alleges all took place within the scope of the employment relationship. An action for negligent retention imposes liability for acts that fall outside the scope of the employment relationship. As this Court recently stated,

> after an exhaustive search of the case law, in this jurisdiction and elsewhere, we have failed to uncover any decision in which the doctrine of negligent hiring or retention has been applied to conduct which arises within the course and scope of an employment relationship. This lack of precedential authority is not surprising, given the fact that the *raison d'etre* for the negligent hiring and retention doctrines was the unavailability of a recovery for conduct which was unactionable under traditional principles of vicarious liability.

*Cook v. Greyhound Lines, Inc.,* 847 F.Supp. 725, 733 (D.Minn.1994). Similarly, the Minnesota Court of Appeals has stated that the doctrine of negligent retention "impose[s] liability for an employee's intentional tort, an action almost invariably outside the scope of employment." *Yunker v. Honeywell, Inc.,* 496 N.W.2d 419, 422 (Minn.Ct.App.1993). In this case, Leidig alleges that Honeywell discriminated against him by laying him off from MAvD and refusing to hire him at ATSD. The Honeywell employees who made those decisions were clearly acting within the scope of their employment. Therefore, there is no basis for a claim of negligent retention.

▮ Leidig's negligent retention claim further fails because the circumstances of this case do not involve a threat of physical injury. In *Yunker,* 496 N.W.2d at 422–24, the Court of Appeals discussed at length the history of and basis for negligent hiring and retention claims. The court explained that employers have a duty under Minnesota law "to refrain from retaining employees with known dangerous proclivities." *Id.* at 423. This duty "address[es] risks created by exposing members of the public to a potentially dangerous individual." *Id.* at 422. Under this theory of liability, an employer may be held directly liable for an employee's intentional torts if "the employer knew or should have known that the employee was violent or aggressive and might engage in injurious conduct." *Id.*

Although Minnesota courts have never directly addressed this issue, the case law strongly suggests that this duty not to retain employees with "known dangerous proclivities" is limited to circumstances involving a threat of physical injury. *See, e.g., Yunker,* 496 N.W.2d at 421 (employee murdered by co-employee); *Ponticus v. K.M.S. Investments,* 331 N.W.2d 907, 911 (Minn.1983) (tenant raped by manager of apartment complex); *Dean v. St. Paul Union Depot Co.,* 41 Minn. 360, 43 N.W. 54, 55 (1889) (plaintiff beaten by employee of defendant's tenant); *see also Perkins v. Spivey,* 911 F.2d 22, 29–30 (8th Cir.1990) (applying Kansas law) (employee allegedly raped repeatedly by supervisor), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991); *Cook,* 847 F.Supp. at 733 (applying Minnesota law) (bus passenger allegedly raped by another passenger while driver failed to intervene). Therefore, the Court concludes that claims for negligent retention under Minnesota law are limited to situations involving a threat of physical injury.[13]

13. In *Thompson v. Campbell,* 845 F.Supp. 665 (D.Minn.1994), Judge Doty denied summary judgment on an employee's claim for negligent retention in a sexual harassment action. In *Thompson,* the defendant argued "that tort claims based on negligent retention arise only where the employer has reason to know that an employee poses an unreasonable risk of serious physical injury to a third person." *Id.* at 675. Judge Doty noted that "the Minnesota courts have not clearly defined the parameters of the duty or the type of claims arising from the negligent retention of an employee." However, Judge Doty concluded that "Minnesota courts have recognized ... that a claim for negligent retention may lie where an employee subjects another employee to sexual harassment." *Id.* (citing *Kresko v. Rulli,* 432 N.W.2d 764, 769 (Minn.Ct.App. 1988)). Therefore, Judge Doty held that the plaintiff stated "a cognizable claim of negligent

## D. Negligent Supervision

In Count 2, Leidig also alleges that Honeywell negligently supervised its employees and that this negligence resulted in discrimination against him on the basis of his age. Minnesota courts have analyzed claims for "negligent supervision" under both the Restatement (Second) of Torts § 317 and Restatement (Second) of Agency § 213. *See Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 533–34 (Minn.1992).

### 1. *Restatement (Statement) of Torts § 317*

█ Section 317 of the Restatement (Second) of Torts provides that, under certain circumstances, an employer has a duty to exercise reasonable care to prevent its employees from intentionally or negligently hurting others while acting outside of the scope of their employment. The duty imposed under § 317 is "unambiguously limit[ed]" to "prevent[ing] an employee from inflicting personal injury upon a third person on the master's premises." *Semrad*, 493 N.W.2d at 534. Since Leidig has offered no evidence of personal injury and has not alleged that the Honeywell employees were acting outside of the scope of their employment, he has no claim for negligent supervision under the Restatement of Torts. *See id.*[14]

### 2. *Restatement (Second) of Agency § 213*

█ Section 213 of the Restatement (Second) of Agency provides that "[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless ... in the supervision of the activity." In Minnesota, the duty under § 213 is based on the agency relationship between employer and employee, and is limited to the employer's activities that are conducted through its employees. *Semrad v. Edina Realty, Inc.*, 470 N.W.2d 135, 146 (Minn.Ct.App.1991), *rev'd in part*, 493 N.W.2d 528 (Minn.1992). "These are, of course, acts in the scope of employment." *Id.* "[S]ection 213 liability has effectively become part of respondeat superior liability in Minnesota." *Id.*

---

retention to the extent that her claim [was] based on [the] alleged sexual harassment." *Id.*

A threat of physical injury may well be present where one employee subjects another employee to sexual harassment. Therefore, the conclusion that a negligent retention claim arises in a situation involving sexual harassment may follow. It should be noted, however, that the Court of Appeals in *Kresko* did not reach the issue of whether a negligent retention claim applies to a situation involving sexual harassment. Instead, the court simply affirmed the dismissal of the plaintiff's negligent retention claim because she had offered no evidence showing that the defendant knew or should have known of the harasser's inappropriate behavior. *Kresko*, 432 N.W.2d at 769–770. Therefore, *Kresko* should not be read for the proposition that a negligent retention claim naturally follows every workplace harassment claim.

**14.** Section 317 provides as follows:

**§ 317. DUTY OF MASTER TO CONTROL CONDUCT OF SERVANT**
A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using the chattel of the master, and
(b) the master
(i) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.
Restatement (Second) of Torts § 317. Comment (a) to section 317 states that "[t]he rule stated in this Section is applicable only when the servant is acting outside the scope of employment." Comment (c) states that an employer "may subject himself to liability under the rule stated in this Section by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others."

Although the claim in *Semrad* was characterized as "negligent supervision," the duty imposed under section 317 is similar if not identical to the duty discussed previously with respect to Leidig's negligent retention claim. *See Yunker*, 496 N.W.2d at 422. Therefore, the Minnesota Supreme Court's conclusion in *Semrad*, that the duty under section 317 is "unambiguously limit[ed]" to "prevent[ing] an employee from inflicting personal injury upon a third person," adds further support for this Court's conclusion that claims for negligent retention are limited to situations involving the threat of physical injury.

■ This Court is not aware of any decision from a Minnesota court in which a cause of action for negligent supervision was applied to a claim for a discriminatory discharge or failure to hire. However, even if the Court assumes that the duty under § 213 extends to this type of situation, Leidig has still failed to offer any evidence suggesting that the duty was breached. Therefore, this claim fails as a matter of law.

Accordingly, based upon a review of all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** That the defendant's motion for summary judgment is GRANTED; and

**IT IS FURTHER ORDERED** That the clerk shall enter judgment as follows:

**IT IS ORDERED, ADJUDGED, AND DECREED** that plaintiff take nothing against the defendant Honeywell, Inc., and this action is dismissed with prejudice, defendant Honeywell, Inc., to have its costs and disbursements as taxed and allowed.