934 F.Supp. 314 (1996)
Paul E. LEWIS, Plaintiff,
v.
AEROSPACE COMMUNITY CREDIT UNION, Defendant.
No. 4:95CV633 FRB.
United States District Court, E.D. Missouri, Eastern Division.
May 22, 1996.
*315 *316 Norvel E. Brown, Centralia, IL, for plaintiff.
James N. Foster, Jr., John F. Kuenstler, McMahon and Berger, St. Louis, MO, for defendant.

MEMORANDUM AND ORDER
BUCKLES, United States Magistrate Judge.
Presently pending before the Court is defendant's Motion for Summary Judgment (filed November 24, 1995/Docket No. 22). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).
In this action, plaintiff claims that his employer, defendant Aerospace Community Credit Union (Aerospace), unlawfully terminated plaintiff from employment on account of his age and thus violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, et seq. Plaintiff complains that his termination was discriminatory both in that he was accorded disparate treatment and that the termination resulted in disparate impact.
In December 1991, defendant Aerospace hired plaintiff as Vice President of Management Information Systems (Vice President-MIS). (Pltf.'s Compl. at para. 8.) This was a newly created position which no one held prior to plaintiff's employment at Aerospace. (Deft.'s Exh. A, Pltf.'s Depo. at 17, 48.) Plaintiff was forty-seven years old. (Pltf.'s Exh. H.) Plaintiff was hired because Aerospace was in the process of converting another credit union to their computer system and needed someone with "heavy duty data processing experience" for the project. (Deft.'s Exh. A, Pltf.'s Depo. at 21-22; Pilger Depo. at 47.) Plaintiff was hired by and worked directly for Nina Pilger, President of Aerospace. Prior to the creation of the position of Vice President-MIS in 1991, the position of Data Processing Manager was the highest level position in the information systems and was held by Tammy Belding. (Deft.'s Exh. A, Pltf.'s Depo. at 17, 49; Pilger Depo. at 47.)
In addition to Ms. Pilger, plaintiff was supervised by and reported to Todd Keller. (Deft.'s Exh. A, Pltf.'s Depo. at 23.) As a result of a reduction in force (RIF), Mr. Keller's employment was terminated approximately fourteen months prior to plaintiff's termination. (Deft.'s Exh. A, Pltf.'s Depo. at 24.) Plaintiff believed Mr. Keller to be fifty or fifty-one years of age at the time of his *317 termination. (Deft.'s Exh. A, Pltf.'s Depo. at 24.)
Reports issued between 1991 and 1993 relating to the operation and status of Aerospace, made by the examiners of the Missouri Division of Credit Unions and National Credit Union Administration, were critical of Aerospace's performance. (Pltf.'s Exh. B, Pltf.'s Depo. at 32-36; Deft.'s Exhs. D, E.) The financial status of Aerospace worsened between 1991 and 1993. (Deft.'s Exh. A, Pltf.'s Depo. at 35; Exh. D.) A Letter of Understanding issued to Aerospace by the Missouri Division of Credit Unions and National Credit Union Administration recommended that Aerospace develop a systematic plan by June 30, 1993, to reduce operating expenses within three years. (Deft.'s Exh. E.) Operating expenses include the cost of personnel and administration within the credit union. (Deft.'s Exh. A, Pltf.'s Depo. at 37.) Aerospace was to consider each service of the credit union and determine whether the service needed to be maintained, changed or deleted. (Deft.'s Exh. E.) In December 1993, the examiners cautioned Aerospace that further erosion of capital adequacy should not occur. (Deft.'s Exh. D.)
Ms. Pilger drafted a cost reduction plan. (Deft.'s Exh. B, Pilger Depo. at 21.) In addition to reducing travel conferences, compensation and training, Aerospace eliminated four positions and discharged four employees as part of its plan to reduce operating costs. (Deft.'s Exh. B, Pilger Depo. at 19-20, 21, 28.) These positions were eliminated in August 1993 and October 1994. (Deft.'s Exh. C, Pilger Affid.) In determining which positions to eliminate, Ms. Pilger determined whether such elimination would impact Aerospace's services to its members. (Deft.'s Exh. B, Pilger Depo. at 28.) Duties previously assigned to these positions were reassigned to various other positions within the credit union. (Deft.'s Exh. B, Pilger Depo. at 23, 33-39, 70.)
In October 1994, plaintiff was aware that Aerospace was forced to reduce its operating costs and thus was required to invoke staff reductions and reorganize operations. (Deft.'s Exh. A, Pltf.'s Depo. at 47-48.) Plaintiff's position was eliminated and plaintiff was discharged on October 31, 1994. (Deft.'s Exh. A, Pltf.'s Depo. at 48-49; Pltf.'s Exh. A, Pilger Depo. at 52; Pltf.'s Exh. G.) Plaintiff was fifty years of age at the time of his discharge. (Pltf.'s Exhs. F, H.) The decision to eliminate plaintiff's position and discharge plaintiff was made by Ms. Pilger. (Pltf.'s Exh. A, Pilger Depo. at 15-16, 44.) No aspect of plaintiff's performance was taken into account in the selection of plaintiff's position for elimination. (Deft.'s Exh. B, Pilger Depo. at 70.) The only aspect of plaintiff or his job which Ms. Pilger considered was plaintiff's compensation and the necessity of the functions he performed. (Pltf.'s Exh. A, Pilger Depo. at 67-69.) Ms. Pilger believed a supervisory position over data processing at the vice president level was unnecessary inasmuch as data processing was self-supporting. (Deft.'s Exh. B, Pilger Depo. at 28, 44.) No person replaced plaintiff in his position after he was discharged; rather, plaintiff's duties were reassigned to various other positions within the credit union. (Deft.'s Exh. A, Pltf.'s Depo. at 56; Exh. B, Pilger Depo. at 23, 33-39, 70.) Ms. Pilger did not consider plaintiff for any other position available in the credit union at the time of his discharge inasmuch as she believed plaintiff to lack the requisite skills for such positions. (Pltf.'s Exh. A, Pilger Depo. at 60, 72.) Since October 31, 1994, Aerospace has hired no new employees in managerial positions. (Deft.'s Exh. B, Pilger Depo. at 137.) In January 1995, managerial positions received an across-the-board five percent salary increase after a two-year wage freeze. (Pltf.s' Exh. A, Pilger Depo. at 131-33.)
At no time did anyone from the credit union refer to plaintiff's age or make agerelated comments in the presence of plaintiff. (Deft.'s Exh. A, Pltf.'s Depo. at 47.) Upon the termination of plaintiff's position, Ms. Belding returned to the position of Data Processing Manager. (Deft.'s Exh. A, Pltf.'s Depo. at 50; Pltf.'s Exh. G.)
Plaintiff claims that his discharge was on account of age discrimination on the part of defendant Aerospace in violation of the Age Discrimination in Employment Act (ADEA). Defendant now moves for summary judgment arguing that there are no issues of *318 material fact and that defendant is entitled to judgment as a matter of law. Specifically, defendant claims that plaintiff has failed to establish a prima facie case of age discrimination. Defendant further claims that its employment decision was based on a legitimate, non-discriminatory reason and that plaintiff has offered no evidence to rebut its legitimate reason. Finally, defendant contends that plaintiff's claim of disparate impact is non-cognizable in ADEA proceedings. Plaintiff has responded to defendant's motion, to which defendant has replied.
Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). The burden of proof is on the moving party to set forth the basis of its motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. The non-moving party may not rest upon its pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.
Summary judgment is a harsh remedy and should not be granted unless the movant "has established his right to judgment with such clarity as to leave no room for controversy." New England Mutual Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir.1988).

I. Disparate Treatment
A plaintiff alleging age discrimination may rely on direct or circumstantial evidence to prove that he was unlawfully discriminated against on account of age. Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir.1995). Plaintiff has not provided direct evidence of such discrimination, so the Court must determine whether plaintiff has provided sufficient circumstantial evidence to survive defendant's motion for summary judgment. Id.
Plaintiff must first establish a prima facie case of age discrimination. McDonnell Douglas v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir.1994). To establish a prima facie case of age discrimination, a plaintiff discharged pursuant to an RIF must show that: 1) he was at least forty years of age at the time of his discharge; 2) he satisfied the applicable job qualifications; and 3) he was discharged. In addition, plaintiff must make some additional showing that age was a factor in his discharge. Nitschke, 68 F.3d at 251; Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 776 (8th Cir.1995); Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1165-66 (8th Cir. 1985). If plaintiff can establish a prima facie case, the burden shifts to the employer-defendant to produce evidence that plaintiff was discharged for a legitimate, non-discriminatory reason. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); Nitschke, 68 F.3d at 251. Once the employer-defendant satisfies its burden, the burden shifts back to the plaintiff to prove that the reason provided by the defendant was a pretext for discrimination. Nitschke, 68 F.3d at 251; Hutson, 63 F.3d at 777. A plaintiff trying to prove pretext must show a causal link between evidence of an employer's discriminatory attitude and plaintiff's discharge. Nitschke, 68 F.3d at 252 (citing Hutson, 63 F.3d at 778-79.)

*319 A. Plaintiff's Prima Facie Case

Defendant does not dispute that plaintiff has satisfied the first three factors in establishing his prima facie case, that is, that plaintiff was over forty years old, satisfied the job requirements, and was discharged. Defendant claims, however, that plaintiff has failed to make an additional showing that age was a factor in his discharge.
Plaintiff has wholly failed to make any showing that age was a factor in his discharge. Plaintiff has failed to demonstrate that defendant had a preference for younger employees in its business organization or that statements made could reasonably be taken to suggest that age was a factor in plaintiff's termination. See, e.g., Hardin v. Hussmann Corp., 45 F.3d 262, 266 (8th Cir.1995); Holley, 771 F.2d at 1166. Plaintiff points only to statistical data and claims that such data shows that three managerial positions terminated as a result of RIF were all held by persons aged fifty years or older. "While statistics may not be a determinative factor in an individual, as opposed to class action, discrimination case, ... they may often be probative and supportive of an individual employee's allegation that an employer has discriminated against him or her on impermissible grounds." Harper v. Trans World Airlines, Inc., 525 F.2d 409, 412 (8th Cir.1975).
In the instant case, plaintiff's statistical evidence is not probative of disparate treatment on the basis of age. The statistics show that in 1993, defendant Aerospace employed nineteen persons within the protected age group and thirty-four persons not within the protected age group. Of the three employees discharged that same year, two were within the protected age group and one was not. The two discharged employees within the protected age group held managerial positions. At the end of 1993, managerial personnel consisted of nine persons within the protected age group and three persons not within the protected age group. (Pltf.'s Exh. C; Deft.'s Exh. C.) In 1994, Aerospace employed twenty persons within the protected age group and thirty-one persons not within the protected age group. Of the six employees discharged that same year, two were within the protected age group and four were not. The two discharged employees within the protected age group held managerial positions. At the end of 1994, managerial personnel consisted of eight persons within the protected age group and two persons not within the protected age group. (Pltf.'s Exh. D; Deft.'s Exh. C.) In 1995, Aerospace employed twenty-one persons within the protected age group and thirty-four persons not within the protected age group. Of the two employees discharged that same year, one was within the protected age group and one was not. Both persons who were discharged held managerial positions. At the end of 1995, managerial personnel consisted of eight persons within the protected age group and two persons not within the protected age group. (Pltf.'s Exh. E; Deft.'s Exh. C.) Between 1993 and 1995, the percentage of defendant's managerial employees within the protected age group increased by five percent.[1] An RIF which increases the percentage of protected employees and increases the average age of employees cannot be viewed as discriminatory. Holley, 771 F.2d at 1167. Thus, the statistics plaintiff provides, standing alone, are insufficient to support a claim of discrimination. See Coble v. Hot Springs School District No. 6, 682 F.2d 721, 733 (8th Cir.1982).
Plaintiff has failed to make an additional showing that age was a factor in his discharge and thus has failed to establish a prima facie case of age discrimination. Even if plaintiff's evidence was sufficient to constitute an additional showing of age discrimination, defendant has articulated legitimate, non-discriminatory reasons for plaintiff's discharge, and plaintiff has failed to show these reasons to be pretextual.

B. Defendant's Legitimate, Non-Discriminatory Reason

Defendant claims that plaintiff's position was eliminated, and thus plaintiff *320 was discharged, as part of a legitimate RIF designed to reduce defendant's costs in response to critical reports and a Letter of Understanding issued by the Missouri Division of Credit Unions and National Credit Union Administration. A company's business decision to reduce its work force is a legitimate reason to discharge qualified employees. Hardin, 45 F.3d at 265. The company need not provide evidence of financial distress or objective criteria for determining who should be discharged to show that its RIF was legitimate. Id.; Bashara, 26 F.3d at 824-25. Therefore, defendant has shown that plaintiff's discharge was pursuant to a legitimate RIF.
In addition, defendant has articulated a non-discriminatory reason for eliminating plaintiff's position and terminating his employment. As discussed above, defendant was required to reduce its costs. Ms. Pilger, the person responsible for the cost reduction plan, determined which positions could be eliminated without significant impact upon Aerospace's services to its members. Ms. Pilger determined that the position of Vice President-MIS could be eliminated inasmuch as it had been in existence for less than three years, that data processing had become self-sufficient, and that the job responsibilities of the position could be redistributed among other positions within the credit union. In addition, as discussed above, the percentage of defendant's management personnel in the protected age group increased by five percent after the RIF was completed. An RIF which increases the percentage of protected employees and increases the average age of employees cannot be viewed as discriminatory. Holley, 771 F.2d at 1167.
Therefore, in light of the above, the undersigned finds that defendant has produced evidence that plaintiff was discharged for a legitimate, non-discriminatory reason.

C. Lack of Pretext or Causal Link

Plaintiff appears to contend that defendant's RIF was a pretext to discharge plaintiff on account of his age and argues that he was qualified to hold the position of Data Processing Manager which existed after RIF, that the position of Data Processing Manager was substantially the same as Vice President-MIS, and that the position of Data Processing Manager was filled by a younger, less experienced and less senior employee. The evidence before the Court does not support plaintiff's argument nor does it show a causal link between any discriminatory attitude and plaintiff's discharge.
First, although plaintiff was indeed qualified for the position of Data Processing Manager, such a reassignment would have been a demotion for plaintiff and Aerospace does not provide for a manager to "bump" down to a lower level position. (Pltf.'s Exh. A, Pilger Depo. at 60-61.) As to plaintiff's claim that the position of Data Processing Manager was substantially the same as Vice President-MIS, the evidence before the Court shows that duties previously assigned to plaintiff as Vice President-MIS were redistributed to various other positions, including Data Processing Manager, Vice President of Finance, Vice President of Operations, and President of Aerospace. (Deft.'s Exh. B, Pilger Depo. at 33-39.) Finally, there is no evidence before the Court which shows that the position of Data Processing Manager was filled by a younger, less experienced and less senior employee than plaintiff. Ms. Belding held the position of Data Processing Manager prior to plaintiff's employment with Aerospace and returned to that position after Aerospace underwent RIF. After plaintiff's discharge, the Data Processing Manager assumed only a portion of the duties previously assigned to plaintiff. Assuming that Ms. Belding is a younger individual than plaintiff, this fact is inconsequential, merely fortuitous and insufficient to show pretext or a causal link between Ms. Belding's reassignment to Data Processing Manager and plaintiff's discharge. See Holley, 771 F.2d at 1167-68 (assuming plaintiff had established prima face case, argument that plaintiff's duties were assumed by younger individual failed to show pretext on the part of defendant). Although the evidence may show that job responsibilities plaintiff held prior to his discharge were not completely eliminated but rather combined with those of younger employees, this does not establish discriminatory intent on the part of defendant when viewed in the context *321 of company cutbacks, such as a reduction-inforce. Holley, 771 F.2d at 1166 (citing Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1117 (6th Cir.1980)).
Plaintiff also claims that the five percent wage increase given to defendant's employees in January 1995 shows that defendant did not need to reduce costs. However, defendant has shown that a wage increase was required by contract to be given to defendant's bargaining unit employees and that the increase given to management personnel followed a two-year wage freeze. No bonuses or incentive payments were given to any employee. (Pltf.'s Exh. A, Pilger Depo. at 131-33.) Further, by his own testimony, plaintiff admits that in October 1994, he was aware that Aerospace was forced to reduce its operating costs and was required to invoke staff reductions. Plaintiff's subjective reaction that defendant did not need to reduce costs and thus that his discharge was on account of his age is insufficient to show defendant's discriminatory intent in discharging plaintiff. See Holley, 771 F.2d at 1168.
Finally, plaintiff relies on the statistics discussed supra to show that defendant's RIF was merely a pretext to discharge plaintiff on account of his age. As discussed above, however, the statistics before the Court are insufficient to show discriminatory intent on the part of defendant.
Therefore, for all of the foregoing reasons, the undersigned finds that plaintiff has failed to produce substantial evidence that Aero-space's explanation for his discharge was a pretext for age discrimination. Nitschke, 68 F.3d at 252. Therefore, plaintiff has failed to meet his burden of proof and defendant should be granted judgment as a matter of law as to plaintiff's claim of disparate treatment.

II. Disparate Impact
As a preliminary matter, the Court notes that the Supreme Court has "never decided whether a disparate impact theory of liability is available under the ADEA." Hazen v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). In pre-Biggins decisions, the Eighth Circuit has held that disparate impact claims are cognizable under the ADEA. See, e.g., Nolting v. Yellow Freight Sys., Inc., 799 F.2d 1192 (8th Cir.1986); Leftwich v. Harris-Stowe State College, 702 F.2d 686 (8th Cir.1983). Since the Biggins decision, neither the Supreme Court or the Eighth Circuit has held that disparate impact theories are non-cognizable under the ADEA. In fact, the Eighth Circuit and district courts within the Eighth Circuit continue to entertain claims of disparate impact under the ADEA. See, e.g., Houghton v. SIPCO, Inc., 38 F.3d 953 (8th Cir.1994); Day v. Board of Regents of University of Nebraska, 911 F.Supp. 1228 (D.Neb.1995); Webb v. Derwinski, 868 F.Supp. 1184 (E.D.Mo.1994), aff'd, 68 F.3d 479 (8th Cir.1995); Leidig v. Honeywell, 850 F.Supp. 796 (D.Minn.1994). Therefore, this Court will assume such a claim to be cognizable.
Disparate impact claims involve employment practices that are facially neutral but that fall more harshly on one group than another and cannot be justified on the basis of business necessity. Day, 911 F.Supp. at 1247; Leidig, 850 F.Supp. at 801. To establish a prima facie case of disparate impact, plaintiff must demonstrate that a specific employment practice or policy has a significant discriminatory impact on a protected group. Leidig, 850 F.Supp. at 802. This showing is generally made by the use of statistical evidence. Day, 911 F.Supp. at 1248.
Plaintiff refers to the statistics cited supra and claims that the statistics show that defendant's RIF policy, albeit facially neutral, fell more harshly upon persons over the age of fifty than other employees. Specifically, plaintiff claims that between 1993 and 1995, three persons over fifty years of age and employed as managerial personnel were discharged and that, as a result, no persons over the age of fifty remained in any managerial position. (Pltf.'s Oppos. to Mot. Summ.Judg. at 3.)
Plaintiff's comparison of employees over the age of fifty to employees under the age of fifty in support of his ADEA disparate impact claim is misplaced inasmuch as the ADEA confers protected status on employees forty years of age or older. Garner v. Arvin *322 Industries, Inc., 885 F.Supp. 1254, 1255 (E.D.Mo.1995); Leidig, 850 F.Supp. at 803 n. 7 (citing Lowe v. Commack Union Free Sch. Dist., 886 F.2d 1364, 1372-73 (2d Cir.1989), cert. denied, 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990)). As discussed above, the statistical evidence before the Court shows that after RIF had been completed, the percentage of defendant's managerial employees within the protected age group increased by five percent. Such an increase in the percentage of protected employees and increase in the average age of employees cannot be viewed as discriminatory. Holley, 771 F.2d at 1167. Plaintiff has presented the Court with no other evidence of disparate impact.
Because plaintiff has failed to demonstrate that defendant's specific employment practice or policy had a significant discriminatory impact on a protected group, that is, employees forty years of age or older, plaintiff has failed to establish a prima facie case of disparate impact. Therefore, defendant should be granted judgment as a matter of law as to plaintiff's claim of disparate impact.
Accordingly,
IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment (Docket No. 22) is granted.
Judgment shall be entered accordingly.
NOTES
[1] The statistics cited above show that in 1993, 75% of managerial employees were within the protected age group; in 1994 and 1995, 80% of managerial employees were within the protected age group.